UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JAY FURTADO,
    Plaintiff,

v.

AMY PAGE OBERG and
DARROWEVERETT LLP,
    Defendants.

C.A. No. 15-312-JJM-LDA

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Jay Furtado has sued Attorney Amy Page Oberg and the law firm of DarrowEverett LLP for legal malpractice, breach of fiduciary duty, and misrepresentation, alleging that they failed to properly advise and represent him in the formation of Total Fitness LLC. Defendants have moved for summary judgment. ECF No. 76. The defining inquiry in his case is whether the parties had an attorney-client relationship. Finding that there are no material facts in dispute over this question and that no such relationship formed, the Court GRANTS Defendants' motion.

I.    FACTS

Getting to a resolution of this dispute has taken a wandering path, including two lawsuits and two different courts, hindered by Ms. Oberg's unavailability and spotty records. Leveling its focus on the facts material to the question at hand, the Court recites only the pertinent undisputed facts as the parties have ably laid out.

Karin Dreier and Jay Furtado decided to open a gym together in 2008 in the name of Total Fitness LLC.[1] Ms. Dreier invested the money to get the gym started and Mr. Furtado's investment was to be $25,000, which Ms. Dreier would front, and he would pay her back on an amortization schedule prepared by Ms. Dreier's brother, an investment banker. ECF No. 83-2 at ¶¶139-140. Ms. Dreier sent the payback schedule to Mr. Furtado by email; Mr. Furtado did not receive it—he was unsure if he was using the email address and did not recall agreeing to the loan. *Id.* at ¶141. That said, there is no dispute that Mr. Furtado knew about Ms. Dreier's expectation that he would invest $25,000 but did not pay the money back. *Id.* at ¶142.

Attorney Oberg was Ms. Dreier's long-time friend and attorney so Ms. Dreier engaged her to provide legal services in forming that limited liability company.[2] ECF No. 78 at ¶¶16-17. Ms. Dreier told Mr. Furtado that Attorney Oberg intended to represent the three owners of the gym. ECF No. 83-2 at ¶96. Attorney Oberg did not supply a written engagement letter or engagement agreement to Ms. Dreier or to Mr. Furtado about her representation or the formation of the gym. *Id.* at ¶95. Attorney Oberg never talked to Mr. Furtado about any conflict of interest issues and never asked him to sign a waiver. *Id.* at ¶102.

She did, however, draw up an Operating Agreement (OA) governing the formation of the LLC. The OA specified that the LLC members had to execute and

---

[1] A third partner, Oswaldo Powell was also involved in the LLC, but he is not involved in this lawsuit, so the Court will not reference his actions in its decision as they are not relevant.

[2] The actions of Attorney Oberg are the responsibility of DarrowEverett and so the Court will refer to them collectively as "Attorney Oberg" or "Defendants."

deliver an Amended Operating Agreement (AOA) no later than four days later, on August 25, 2008 and that if a member did not execute and deliver that AOA, he or she would cease to be a member of the LLC. ECF No. 78 at ¶34. Ms. Dreier, Mr. Furtado, and Mr. Powell all signed the OA. *Id.* at ¶36. Shortly thereafter, they agreed to extend the deadline to sign the AOA until September 3, 2008. *Id.* at ¶39. Ms. Dreier distributed an email from Attorney Oberg, showing the agreement to extend to Mr. Furtado and Mr. Powell for them to sign. *Id.* at ¶¶40, 43. They all acknowledged the new deadline when they signed the email. *Id.* at ¶44. Ms. Dreier timely signed the AOA. *Id.* at ¶46. Mr. Furtado never signed the AOA even though Attorney Oberg discussed with him the consequences if he did not sign it. *Id.* at ¶¶37, 49. He testified that he never saw the AOA yet never followed up with either Ms. Dreier or Attorney Oberg. *Id.* at ¶49. The invoices for legal services for the LLC went to Ms. Dreier's home, addressed to the LLC, and she paid them out of the LLC's account that she funded. *Id.* at ¶25.

Around the same time the parties formed the LLC, Mr. Furtado talked to Attorney Oberg about an unrelated legal complaint (the Farina matter). ECF No. 83-2 at ¶¶124-125. She agreed to help him with that legal issue and they met on three separate occasions to discuss the case. *Id.* at ¶¶125-126. Attorney Oberg did not have Mr. Furtado sign an engagement agreement. *Id.* at ¶127. She settled the case and did not charge Mr. Furtado any fees. *Id.* at ¶¶128-129. During her interactions about this unrelated legal matter, Attorney Oberg asked Mr. Furtado if she could provide any help related to the LLC, but never talked about the AOA (which he had not

3

signed) and the fact that his failure to sign the AOA meant that he was not an owner. *Id.* at ¶¶130-131.

Total Fitness operated from October 2008 until January 2014, but it never generated a profit. Mr. Furtado asked Ms. Dreier if he could review the gym's financials in 2012, but she refused, telling him that he was not an owner. ECF No. 78 at ¶60. The gym closed in 2014, but not before Mr. Furtado sued Ms. Dreier in 2013 in state court seeking a declaration that he was an owner of Total Fitness.[3] ECF No. 83-2 at ¶180. That case settled, but this malpractice suit against the attorney and firm followed.

Mr. Furtado brings three claims against Defendants–Legal Malpractice (Count 1), Breach of Fiduciary Duty (Count 2), and Misrepresentation (Count 3). Mr. Furtado alleges in his complaint that Attorney Oberg failed to give him the AOA, failed to let him know that Ms. Dreier signed the AOA, failed to let him know later that the LLC's charter was being revoked, and then helped DarrowEverett cover up these failures and their prior representation of Mr. Furtado. ECF No. 1.

## II. STANDARD OF REVIEW

The Court can grant summary judgment only when it finds that no genuine dispute as to the material facts of the case exists and that the undisputed issues support an entitlement to judgment as a matter of law. *See Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011). The Court should and will view evidence in the

---

[3] A law firm for Mr. Furtado sought the client file from DarrowEverett who responded that it reviewed the Total Fitness LLC file and determined that there was no attorney-client relationship with Mr. Furtado.

4

light most favorable to the non-moving party and draw all reasonable inferences in his favor. *Id.*

III. ANALYSIS

   *A. Legal Malpractice and Breach of Fiduciary Duty*[4]

Each of Mr. Furtado's claims of neglect that support his causes of action are all dependent on there being an attorney-client relationship between Mr. Furtado and Attorney Oberg. The attorney-client relationship creates a duty, the breach of which can give rise to a legal malpractice claim.[5] *Rhode Island Depositors Econ. Prot. Corp. v. Hayes*, 64 F.3d 22, 27 (1st Cir. 1995). "[A]n attorney-client relationship is contractual in nature, and thus is the product of an agreement of the parties and may be implied from their conduct. Again, absent such a contractual relationship, the attorneys would have owed no duty" to the business partners. *Id.* (citing *Church v. McBurney*, 513 A.2d 22, 23 (R.I. 1986)).

Here, there is no dispute that the parties did not execute a written representation contract, but Mr. Furtado argues he had an implied attorney-client

---

[4] A "claim by a client against an attorney for breach of fiduciary duties is a claim for legal malpractice." *Cronan v. Iwon*, 972 A.2d 172, 175 (R.I. 2009) (citing 4 Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice* § 15:2 at 644-45 (2008)). Given this alignment, the Court will consider these claims together.

[5] To prevail on a legal malpractice claim, "a plaintiff must prove by a fair preponderance of the evidence not only a defendant's duty of care, but also a breach thereof and the damages actually or proximately resulting therefrom to the plaintiff." *Macera Bros. of Cranston, Inc. v. Gelfuso & Lachut, Inc.*, 740 A.2d 1262, 1264 (R.I. 1999) (per curiam). A breach of fiduciary duty claim requires that "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Restatement (Second) *Torts* § 874 cmt. a.

relationship with Ms. Oberg, alleging that he believed she represented him as an owner of Total Fitness based on the parties' actions. The implied attorney-client privilege needs a manifestation of an intent to create such a relationship. *Fogarty v. Palumbo*, 163 A.3d 526, 541 (R.I. 2017). But to find an implied contract between an attorney and a client, "the law requires more than an individual's subjective, unspoken belief that the person with whom he is dealing . . . has become *his* lawyer." *Sheinkopf v. Stone*, 927 F.2d 1259, 1265 (1st Cir. 1991) (emphasis in original). "If any such a belief is to form a foundation for the implication of a relationship of trust and confidence, it must be objectively reasonable under the totality of the circumstances." *Id.*

Courts have examined the many factors involved in proving an implied contract, including whether the client: (1) affirmatively sought individualized legal advice; (2) expressed his belief that the attorney represented him as an individual to the attorney, *In re Cumberland Inv. Corp.*, 120 B.R. 627, 630 (Bankr. D.R.I. 1990); (3) received legal advice from the attorney on issues individual to him, *Intl. Strategies Grp, Ltd. v. Greenberg Traurig, LLP*, 482 F.3d 1, 9-11 (1st Cir. 2007); (4) told others that the attorney represented him, *Fogarty*, 163 A.3d at 541; (5) personally paid for the attorney's services at issue and/or (6) sought separate counsel when a dispute arose, *Ageloff v. Noranda, Inc.*, 936 F. Supp. 72, 75 (D.R.I. 1996).

Looking at the factors courts use to determine whether an implied attorney-client relationship exists, the Court finds that there are no material facts in dispute, and the undisputed facts do not support an implied attorney-client relationship.

6

Other than relying on his subjective belief, Mr. Furtado does not present evidence that Attorney Oberg was his attorney under the totality of the circumstances.[6] The undisputed facts are:

1. Attorney Oberg had represented Ms. Dreier individually for twenty years on many legal matters; Mr. Furtado and Attorney Oberg had no relationship before the formation of the LLC. ECF No. 78 at ¶¶ 17, 21.

2. Mr. Furtado never asked Ms. Oberg to represent him; Attorney Oberg never agreed to represent Mr. Furtado. *Id.* at ¶ 22-24.

3. Attorney Oberg never told Mr. Furtado she represented him. *Id.* at ¶ 23.

4. DarrowEverett opened a "sub-file" for the LLC matter under Mr. Dreier's personal file at the law firm. *Id.* at ¶ 19.

5. There are no correspondence or telephone calls solely between Attorney Oberg and Mr. Furtado. *Id.* at ¶¶ 27-28.

6. Attorney Oberg never gave individualized legal advice to Mr. Furtado. *Id.* at ¶¶ 19-28 (generally).

---

[6] The parties dispute who Defendants actually represented in the formation and handling of the LLC. Defendants argue that Attorney Oberg represented Ms. Dreier only; Mr. Furtado asserts that she represented the LLC because the fee payment was made from the LLC's bank account, Attorney Oberg was the registered agent for the LLC and received notices for the LLC, and DarrowEverett made efforts to reinstate the LLC's corporate charter in 2012. Even if such facts supported an attorney-client relationship between Attorney Oberg and the LLC, once Mr. Furtado did not execute and deliver the AOA, he does not dispute that he knew that he would not be a member if he failed to sign. And this is evidenced by the fact that while he continued to manage the gym and train clients, Ms. Dreier refused to let him see the gym's financial statements and records. Therefore, the Court need not make an affirmative determination of who the firm represented and limits its finding to whether the firm represented Mr. Furtado individually.

7. Attorney Oberg never billed Mr. Furtado, and Mr. Furtado never paid Attorney Oberg anything. *Id.* at ¶24.

8. When a dispute arose about the LLC, Mr. Furtado identified Attorney Oberg as Ms. Dreier's attorney and he retained another attorney as his attorney, not Attorney Oberg. *Id.* at ¶¶62-65.

In the face of these undisputed facts and in support his position that he had an implied attorney-client relationship with Attorney Oberg, Mr. Furtado argues that he spoke with Attorney Oberg about what type of entity to form, equal ownership of the entity she was forming, personal liability issues as a member of a limited liability company, and management and governance of the LLC as it began to operate; that Defendants represented him in the Farina matter in the days after the LLC was formed, essentially making them "his lawyers"; and that Mr. Furtado and Ms. Dreier approached Ms. Oberg together at least a year later concerning problems they were having with Mr. Powell. ECF No. 83 at 13 (citations omitted). None of the factors Mr. Furtado cites, alone or together, are enough to sustain an implied attorney-client relationship.

    *i. Conversations about how to form the entity*

Attorney Oberg met with Ms. Dreier and Mr. Furtado to discuss issues about the LLC's capital structure, its corporate governance and later operations, and the personal liability of the individual participants. ECF No. 78 at ¶31. Ms. Dreier approached her long-time personal attorney to set up an LLC, which she was fully

funding. There is no evidence of any individualized advice given to or on behalf of Mr. Furtado by Attorney Oberg.

ii. *Farina matter*

Attorney Oberg did represent Mr. Furtado in a case about a truck he co-owned with an acquaintance. ECF No. 83-2 at ¶124. But, as a matter of law, it is not "sufficient to show that an attorney-client relationship existed as to an unrelated matter; rather, the plaintiff must prove that the relationship existed with respect to the act or omission which forms the basis for the malpractice claim." *Francis v. Goodman*, No. 95-1933, 1996 WL 433389, at *29 (1st Cir. Aug. 1, 1996) (citing *Symmons v. O'Keeffe*, 644 N.E.2d 631, 639 (Mass. 1995)).

iii. *Problems with Mr. Powell*

At some point, Mr. Furtado and Ms. Dreier wanted to remove Mr. Powell from Total Fitness because of his "disruptive behavior." ECF No. 83-2 at ¶¶132-33. Mr. Furtado points to this as evidence that Attorney Oberg was his attorney. The problem with this assertion is that the evidence is undisputed that Attorney Oberg never gave Mr. Furtado any personal or individualized legal advice during this dispute. ECF No. 78 at ¶¶19-28.

Therefore, the Court finds that the record supports the singular conclusion that there was no attorney-client relationship between Mr. Furtado and Attorney Oberg and thus she owed him no duty that could support his claims for legal malpractice and breach of fiduciary duty. While Mr. Furtado believed that Attorney Oberg represent him, his subjective belief, without other supportive indicia of an

attorney-client relationship, is not enough. *See Sheinkopf*, 927 F.2d at 1265. Considering the undisputed facts, the Court finds that Mr. Furtado's belief that he had an attorney-client relationship with Defendants was not objectively reasonable.

### B. Misrepresentation

Mr. Furtado's misrepresentation claim[7] arises out of the representations he alleges DarrowEverett made in the underlying state court litigation. After the 2012 dispute arose, DarrowEverett asserted a counterclaim on Ms. Dreier's behalf that alleged Mr. Furtado was a de facto partner in Total Fitness and thus liable for the gym's debt. He alleges that he relied on this representation, which is a different representation than Defendants are making here, and it induced him to remain working without pay and refrain from pursuing other business and employment opportunities.

In response to this claim based on arguments it made during the state court litigation, DarrowEverett cites the litigation privilege. This defense provides that absolute immunity protects them for publishing "libelous matter in pleadings filed in judicial proceedings ... where the statements are material, pertinent or relevant to the issues therein...." *Vieira v. Meredith*, 123 A.2d 743, 744 (R.I. 1956); *Kissell v.*

---

[7] To prove his misrepresentation claim, Mr. Furtado must show "1) a misrepresentation of a material fact; 2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; 3) the representor must intend the representation to induce another to act on it; and 4) injury must result to the party acting in justifiable reliance on the misrepresentation." *Mallette v. Children's Friend & Serv.*, 661 A.2d 67, 69 (R.I. 1995) (citation omitted).

10

*Dunn*, 793 F. Supp. 389, 392 (D.R.I. 1992). Courts have expanded this privilege to apply to all civil liability, including claims associated with an attorney's "function as an advocate" such as negligent misrepresentation. *See Simms v. Seaman*, 308 Conn. 523, 566-567 (2013). The privilege "is based on the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." *Mack v. Wells Fargo Bank, N.A.*, 88 Mass. App. Ct. 664, 667-668 (2015) (quotation omitted). The Court finds that the undisputed facts show that the litigation privilege protects DarrowEverett's litigation strategies and practices in the underlying lawsuit. DarrowEverett cannot be held liable in this action for legal positions taken in other litigation. The litigation privilege applies here because it protects DarrowEverett's ability to represent its client.

## IV. CONCLUSION

Based on the undisputed material facts revealed during this lengthy litigation, the Court finds that an order of summary judgment for both Defendants is appropriate. The Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 76.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

February 4, 2019